Taft, J.
The question to be decided is whether the evidence was sufficient to justify submission of the case to the jury. In deciding that question, we will refer only to those portions of the evidence favorable to plaintiff’s contentions.
Defendant’s lubritorium had ramps for two cars. When a car was driven onto one of the ramps, the ramp could be raised so as to enable defendant’s employees to work under the car in lubricating it. At the entrance of the lubritorium, there were two doors, one in front of each ramp, and the ramps extended almost to these doors. Between these doors there was a small dividing partition with channels “for the doors to lower and rise in.” This partition was supported on a concrete base about two and one-half feet wide and three inches high which extended in a semicircle in front of the lubritorium. In driving into the lubritorium from the outside concrete drive, there was a slight elevation just before the floor level of the lubritorium was reached.
Plaintiff drove his car onto the right-hand ramp to have it lubricated. He got out of the car on the left- *540 hand side and walked towards its rear. Not being able to get out of the door on the side where he came in he started to go out the other door, and, as he moved his left foot from the lubritorium through this entranceway, he stepped on some grease, slipped, and fell. He testified that the grease was on the concrete just outside the lubritorium and about sis inches from the concrete base for the partition which has been hereinbefore described. In describing the grease, plaintiff stated that “it consisted of a heavy grease which had been used for lubricating shacklebolts and lubricating joints where they use a heavy grease,” that it was like the lubrication grease that was in the lubrication guns used by defendant, and that there was a spot about five inches across in a kind of circular shape. Apart from plaintiff’s testimony that enough grease got onto his clothes to be noticeable and that he later had it cleaned off his shoe and his pants, there is no evidence at all as to how much grease there was in or on the five-inch circular spot.
This case does differ from Parras v. Standard Oil Co., 160 Ohio St., 315, 116 N. E. (2d), 300, in that there was no evidence of the nature of the substance causing the fall in that case, although that substance is identified in the instant case as heavy grease like the grease used by the defendant in lubricating cars. However, in the opinion by Stewart, J., in that case it is said:
“Paraphrasing a part of the above quotation [from S. S. Kresge Co. v. Fader, 116 Ohio St., 718, 158 N. E., 174], everybody knows that in a lubritorium where automobiles are greased and lubricated there is bound to be oil and grease around and it is not the duty of persons in control of such lubritorium to constantly keep moppers ánd cleaners wiping up the oil and grease as fast as it accumulates.”
Defendant contends that the evidence, that the *541 grease was where it was and that it was like grease used by defendant in its nearby lubricating work, will support a reasonable inference that the grease was put where it was by defendant in carrying on its lubricating work. However, conceding that such a reasonable inference may be drawn, there is absolutely nothing in the evidence tending to prove that grease will more probably get upon the ground in or just outside the door of a lubritorium as a result of some negligent act of the operator of the lubritorium rather than merely as a result of some nonnegligent act of such operator. Even if a hazard is created by some act of a defendant or one of his employees, plaintiff has the burden of proving either (1) that such act was a negligent act or (2) that defendant or his employees had or should, in the exercise of ordinary care, have had notice of the hazard for a sufficient time to enable them in the exercise of ordinary care to remove it. Boles v. Montgomery Ward & Co., 153 Ohio St., 381 (paragraph five of the syllabus), 92 N. E. (2d), 9; J. C. Penny Co., Inc., v. Robison, 128 Ohio St., 626, 193 N. E., 401, 100 A. L. R., 705. There is no evidence in the instant case as to how long this grease spot had been in the place where plaintiff claims to have fallen. Johnson v. Wagner Provision Co., 141 Ohio St., 584, 49 N. E. (2d), 925. Cf. Kokinos v. Ohio Greyhound, Inc., 153 Ohio St., 435, 92 N. E. (2d), 386, an action by a passenger against a common carrier. With respect to S. S. Kresge Co. v. Holland, 34 Ohio Opinions, 464, 158 F. (2d), 495, relied upon by plaintiff, it is sufficient to state that it was decided before the decision of this court in Boles v. Montgomery Ward & Co., supra.
Whether the duty of ordinary care, which the occupier of premises owes to one of his business invitees, requires such occupier to prevent, remove, or warn against a particular hazard will necessarily depend *542 on factors such as the potential hazard involved, the opportunity which such an invitee apparently would or would not have to avoid that potential hazard by the exercise of ordinary care, and the practicability of preventing, removing or warning against such hazard. See Schwer, Admx., v. New York, Chicago & St. Louis Rd. Co., 161 Ohio St., 15, 22, 23, 117 N. E. (2d), 696, and cases cited therein.
In order to prevent, remove or warn against a grease spot such as that involved in the instant case, the operator of a lubritorium would have to either have such grease mopped up as fast as it fell, or keep customers away from the lubritorium and have cars driven into and out of it only by himself or his employees, or point out or require his employees to point out such spots to customers and tell them to watch out for them. Any of these measures would obviously require a substantial portion of the time of the operator of the lubritorium or of his employees and thereby increase the cost of operating his business.
Before the rejection of the scintilla rule by this court in Hamden Lodge v. Ohio Fuel Gas Co., 127 Ohio St., 469, 189 N. E., 246, submission of the instant case to a jury might have been approved. See F. W. Woolworth Co. v. Kinney, 121 Ohio St., 462, 169 N. E., 562. However, the potential hazard from a mere five-inch circular spot of heavy grease on the floor just outside the door of a lubritorium is slight, even if it can be said that such spot involves any apparent hazard; and, in our opinion, that potential hazard is not such as to justify the conclusion that the duty of ordinary care, which the operator of such lubritorium owes to his customers, would ever require him to increase the cost of conducting his lawful business so as to prevent, remove or warn against such a grease spot. See Bosler v. Steiden Stores, Inc., 297 Ky., 17, 22, 178 S. W. (2d), 839, 841. Furthermore, the fact, *543 that a business invitee by the exercise of ordinary care will apparently have an ample opportunity to see such a spot and to avoid stepping on it, is an additional reason for concluding that ordinary care on the part of the operator of such a lubritorium should not require him to increase the cost of conducting his business so as to prevent, remove or warn against such a grease spot. See Greene v. Sibley, Lindsay & Curr Co., 257 N. Y., 190, 177 N. E., 416. Thus, this case is not like a case where there is grease in or just outside the portion of a station where a customer would normally go to settle his bill. In such a ease, the duty of ordinary care to his customers might require the operator of the station to do something ^o prevent, remove or warn about such grease since such operator might not be justified, as in the instant case, in reasonably anticipating that his customers would ordinarily expect to find grease in such a place. Standard Oil Co. v. Gentry, 241 Ala., 62, 1 So. (2d), 29. Everyone knows that grease spots accumulate on the floors of our garages even where no lubricating operations are being conducted. It would hardly be contended that the exercise of the duty of ordinary care to a business invitee would require the occupier of a garage to remove such spots. Certainly, a lubritorium is sufficiently similar to such a garage so that one who is in it can reasonably expect similar conditions therein.
It must be remembered that lubritoriums are frequently operated by those who have limited financial resources. Ordinary care requires of them the same duties that are required of operators such as this defendant. It would be unreasonable for the law to confront them with the alternative either (1) of increasing the cost of operating their business to eliminate conditions on their premises involving such a slight hazard to their invitees as that involved in the *544 instant case or (2) of running the risk of substantial judgments agains u them on account of such conditions.
The judgment of the Court of Appeals is reversed and final judgment is rendered for defendant.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman and Stewart, JJ., concur.
Bell, J., concurs in paragraph one of the syllabus and in the judgment.