Geneva C. BARTLEY, Appellant,

v.

**EDUCATIONAL TRAINING SYSTEMS, INC. d/b/a A–Pass Weikel Real Estate School, Appellee.**

No. 2002–SC–0476–DG.

Supreme Court of Kentucky.

May 20, 2004.

---

Cullen Gault, Lexington, Counsel for Appellant.

J. Dale Golden, John W. Walters, Michael T. Davis, Golden & Walters, Lexington, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

This appeal arises from a summary judgment granted by the Fayette Circuit Court to Appellee Educational Training Systems, Inc., d/b/a A–Pass Weikel Real Estate School (hereinafter "ETS"), on Appellant Geneva C. Bartley's claim for damages from injuries she sustained after tripping on a carpet remnant used as a floor runner at the school. The Court of Appeals, in a 2–1 decision, affirmed the trial court. We thereafter granted discretionary review. We reverse the decision of the Court of Appeals and remand this matter to the trial court for further proceedings.

Bartley, who attended real estate classes conducted by ETS, tripped and fell while traversing the school's main classroom. In her deposition, Bartley testified that following class, she gathered her books and book bag, then turned to leave. From her seat near the center aisle, Bartley took one step with her right foot, but when she tried to take a second step, her left foot became caught underneath "something," pitching her body forward and onto the floor. Bartley looked back and noticed a "big wrinkle" in a piece of carpet, a "runner like thing" that lay in the aisleway.

A more complete description of the carpet runner is found in Bartley's answers to interrogatories:

There was a piece of carpet laying on top of the carpet down the [a]isle. The carpet was off of the same carpet the floor was done in. It did not show up or stand out. It didn't have a binder around the edges, it was not secured to the floor in any way. There was tables and chairs on both sides of the runner. The tables may have hung out over the edges of the runner. If you didn't have a reason to notice the runner, you probably wouldn't.

Don Gaines, the ETS instructor who was present when Bartley fell, provided similar testimony regarding the floor covering in the classroom. Gaines testified that a rectangular "piece of carpet" lay near where Bartley fell. Unbound at the edges, the piece matched the underlying wall-to-

wall carpeting in color and style. It would have been reasonable for a fact finder to infer that it was camouflaged as it presented a false appearance of being part of the wall-to-wall carpeting. To the best of Gaines' knowledge, this piece was a remnant, cut from extra material left over when the original carpeting was installed some five years earlier. This remnant was placed near a trash can at the back of the classroom, extended into the center aisle, and served to protect the wall-to-wall carpet from "sloppy students."

Bartley argues that the Court of Appeals erred in affirming the trial court's grant of summary judgment. In the trial court's opinion and order granting summary judgment, the trial judge concluded that as a matter of law, "merely using carpet runners does not, by itself, create an unsafe condition." With this proposition, the Court of Appeals agreed. While no Kentucky case deals specifically with this issue, the Court of Appeals looked to decisions from other jurisdictions for persuasive reasoning.

For example, in *Robinson v. Southwestern Bell Telephone Co.*, 26 Ill.App.2d 139, 167 N.E.2d 793 (1960), discussed by the Court of Appeals, a business invitee fell after stepping on a rubber safety mat placed outside a doorway. After noting that no evidence revealed any damaged or defective condition in the mat, the Illinois court held that the "use of ordinary floor mats to assist pedestrians is perfectly reasonable, and the fact that a person trips on one of them is no evidence of negligence." *Id.* at 796.

Likewise, in *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.1970), also relied upon by the Court of Appeals, a business invitee fell after catching the heel of her shoe in the defendant's throw rug. The Texas Supreme Court, in upholding the grant of summary judgment against the plaintiff, noted that no evidence suggested that the throw rug was of unusual type or construction, or that its placement in the shop suggested any unreasonable risk of harm. *Id.* at 754.

Not all cases involving trip and falls over rugs and floor mats, however, excuse liability. In contrast to *Robinson* and *Seideneck, supra,* the Supreme Court of Minnesota found sufficient evidence to create a jury question regarding negligence in *Gray v. First National Bank of Crosby,* 250 Minn. 539, 85 N.W.2d 668 (1957). In *Gray,* a seventy-five year old plaintiff fell as she exited the defendant's bank, stepping on a mat constructed from small pieces of rubber cut from used car tires. The court held that "while the evidence in this case is not strong, we are convinced that it was for the jury to say whether the placing of this mat on a step, such as we have here, met the duty required of the bank for the protection of its customers." *Id.* at 670–671.

Similarly, in *Wood v. Tri–States Theater Corp.,* 237 Iowa 799, 23 N.W.2d 843 (Iowa 1946), the Iowa Supreme Court ruled in favor of a plaintiff moviegoer who tripped over a heavy mat made of "chunks of leather" held together by steel wires. *Id.* at 845. After analyzing the size, shape and materials of the mat in question, the court opined that "under the particular circumstances shown, it may fairly be concluded that plaintiff was unnecessarily or unreasonably exposed to danger." *Id.* at 846.

■ Under common law principles of negligence, a possessor of land may be subject to liability for failing to protect his or her invitees against dangerous conditions involving unreasonable risks of harm. *See* Restatement (Second) of Torts § 343 (1965).

The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm.

William Prosser and W. Page Keeton, *Prosser and Keeton on Torts*, § 61 (5th ed.1984).

■ In the present matter, we find the Court of Appeals erred by holding that Bartley "failed in her burden of showing that the carpet remnant created a 'dangerous' or 'unsafe' condition," as well as by affirming the trial court's determination that ETS be absolved of negligence as a matter of law. Ample evidence suggested that the piece of carpet over which Bartley fell was not a specially designed and produced carpet runner for commercial use. Apparently, it was only a carpet remnant left over from the wall-to-wall carpeting. In addition, Bartley averred, and the trial court accepted as fact, that a carpet expert would testify at trial regarding the dangerous condition created by this type of carpet runner, in this particular case because the runner lacked proper edging and backing material.

From the evidence in the record, a reasonable inference can be drawn that the carpet runner constituted an unsafe condition on the ETS premises, an inference which in our view should have precluded the entry of summary judgment in this case. Summary judgment allows a trial court to terminate litigation when it appears there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. CR 56.03; *Commonwealth, Dep't of Parks v. Whitworth*, Ky., 74 S.W.3d 695 (2002); *City of Florence v. Chipman*, Ky., 38 S.W.3d 387 (2001). Our decisions have stressed that

summary judgment is not a substitute for trial, and is only appropriate "when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Ctr., Inc.*, Ky., 807 S.W.2d 476, 482 (1991).

Although we have addressed the sole issue raised by Bartley on this appeal, for purposes of clarity it is necessary to briefly examine the alternative grounds relied upon by the trial court in granting summary judgment. The trial court held that since Bartley did not notice the wrinkle in the carpet until *after* she fell, she could not prove, "circumstantially or otherwise, the approximate length of time the condition existed so as to allow the Defendant sufficient time to discover and correct the defective condition." The Court of Appeals affirmed on this basis as well.

The decisions of both the trial court and the Court of Appeals preceded our recent holding in *Lanier v. Wal–Mart Stores, Inc.*, Ky., 99 S.W.3d 431 (2003). In *Lanier*, this Court adopted a burden-shifting approach to premises liability in cases involving injuries to business invitees. *Id.* at 436. Prior to *Lanier*, a plaintiff injured by a dangerous condition was required to prove either (1) that the proprietor or those under his authority created the dangerous condition, or (2) that the condition existed a sufficient length of time so that in the exercise of ordinary care, the proprietor could have discovered and remedied the condition or given warning to those endangered by its presence. *See Cumberland College v. Gaines*, Ky., 432 S.W.2d 650, 652 (1968); *Kroger Co. v. Thompson*, Ky., 432 S.W.2d 31 (1968). Since Bartley could not prove how long the wrinkle was present in the carpet runner before she fell, or that ETS or its employees somehow created this condition, her claim of

negligence failed under the law as it existed before *Lanier*.

 Our decision in *Lanier* changed the landscape of premises liability cases by altering the burden of proof required of injured plaintiffs. In *Martin v. Mekanhart Corp.*, Ky., 113 S.W.3d 95 (2003), we summarized this new burden-shifting approach as follows:

> Under *Lanier*, the customer retains the burden of proving that: (1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees. Such proof creates a rebuttable presumption sufficient to avoid a summary judgment or directed verdict, and "shifts the burden of proving the absence of negligence, *i.e.*, the exercise of reasonable care, to the party who invited the injured customer to its business premises."

*Id.* at 98 (citations omitted). In essence, so long as Bartley meets the requirements listed above, she no longer needs to show how long the wrinkle in the carpet existed before her accident in order to pursue a claim of negligence under this theory of liability.

ETS argues vigorously that *Lanier* should be limited in application to slip and fall cases involving invitees of self-service retail shops. Although the particular facts of *Lanier* certainly involved a self-service business, we recognize no such constraint on our new burden-shifting approach. For example, in *Martin v. Mekanhart Corp.*, *supra*, an injured plaintiff slipped and fell after stepping on a slick substance, presumably motor oil, in a restaurant parking lot. 113 S.W.3d at 96–97. After analyzing the case under the burden-shifting approach in *Lanier*, we reversed a decision of a panel of the Court of Appeals, the panel having based their holding on the old burden of proof and notice requirements espoused in cases such as *Cumberland College*, *supra*.

Accordingly, we reverse the summary judgment entered by the Fayette Circuit Court and its affirmance by the Court of Appeals, and remand this case to the Fayette Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J., COOPER, GRAVES, STUMBO, and WINTERSHEIMER, J.J., concur.

JOHNSTONE, J., concurs in a separate opinion.

KELLER, J., concurs in a separate opinion.

Concurring opinion by Justice JOHNSTONE.

I continue to believe that this Court seriously erred in *Lanier v. Wal–Mart Stores, Inc.*, Ky., 99 S.W.3d 431 (2003), by changing the long and well-founded law of the Commonwealth concerning the burden of proof in slip and fall cases. *See id.* at 438 (Johnstone, J., dissenting). Nonetheless, my sworn duty to uphold and follow the law compels me to turn a deaf ear to the call of reason and logic by concurring in the result reached in the majority opinion.

Concurring opinion by Justice KELLER.

I joined Justice Johnstone's dissenting opinion in *Lanier v. Wal–Mart Stores,*

*Inc.*[1] because I believed then—and I continue to believe—that the burden of proof in slip and fall cases should remain with the plaintiff and that this Court erred in overruling Kentucky's well-established common law on premises liability. I recognize, however, that a majority of this Court concluded otherwise and held that "the issues of causation and notice should be treated not as elements of the customer's case, but as affirmative defenses of the proprietor."[2] I am also aware that legislative efforts to overrule *Lanier* were unsuccessful in the recent session of Kentucky's General Assembly.[3] Accordingly, although I would vote to overrule *Lanier* if three other members would join me, like Justice Johnstone, I, too, must temporarily set aside my views and apply the Court's precedent. After doing so, I concur in the majority opinion based on *Lanier*.

Finally, I would note that summary judgment was likewise improper in this case under the common law standard purportedly employed by the trial court. As this Court held in a number of pre-*Lanier* cases, a plaintiff makes a submissible case for negligence when she is able to demonstrate by either direct or circumstantial evidence that the condition that caused the injury was either created under the premises owner's authority or existed for a sufficient length of time prior to injury that the premises owner in the exercise of ordinary care could have discovered it.[4] Appellee's instructor, Don Gaines, who was present at the time of Appellant's injury, testified that the offending carpet remnant was cut when the classroom carpet was installed approximately five years prior to the incident. Further, Gaines testified that the carpet had been placed in the aisle in order to protect the carpet from "sloppy students." This evidence was sufficient to permit a jury to reasonably infer either (1) that Appellee or its employees created the condition or (2) that the condition existed for five years prior to the accident. Additionally, because of the carpet's lack of edging, the jury could have inferred that the carpet remnant created an unsafe condition. Thus, applying the common law standard, Gaines's testimony created a genuine issue of material fact as to whether Appellee created or should have known about an unsafe condition that caused Appellant's injury.

---

1. Ky., 99 S.W.3d 431 (2003).

2. *Id.* at 435 (quoting *Smith v. Wal–Mart Stores, Inc.*, Ky., 6 S.W.3d 829, 831–31 (1999) (Cooper, J., concurring)).

3. House Bill 620 § 1 (2004 Regular Session) ("It is the intent of the General Assembly to restore and codify in Sections 1 to 5 of this Act the common law governing premises liability claims and lawsuits against businesses offering goods and services for sale as the common law existed in the Commonwealth prior to and until March 30, 2003.").

4. *Cumberland College v. Gaines*, Ky., 432 S.W.2d 650, 652 (1968) ("However, where it is not shown that the condition was created by the possessor or under his authority, or is one about which he has taken action, then it is necessary to introduce sufficient proof by either direct evidence or circumstantial evidence that the condition existed a sufficient length of time prior to injury so that in the exercise of ordinary care, the possessor could have discovered it and either remedied it or given fair adequate warning of its existence to those who might be endangered by it.") (citing *Kroger Co. v. Thompson*, Ky., 432 S.W.2d 31 (1968)). See also *Jones v. Jarvis*, Ky., 437 S.W.2d 189, 190 (1969); *Wiggins v. Scruggs*, Ky.App., 442 S.W.2d 581, 582 (1969); *Nelson v. Midwest Mortgage Co.*, Ky., 426 S.W.2d 149, 150 (1968).